```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION


LEILA HEWITT, INDIVIDUALLY, AND ON
BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF CHARLES HEWITT, DECEASED              PLAINTIFFS

VS.                           CIVIL ACTION NO. 5:11-cv-54(DCB)(RHW)

FRANKLIN COUNTY MEMORIAL HOSPITAL,
BENJAMIN YARBROUGH, M. D., AMERICAN
MEDICAL RESPONSE, INC., JOHN DOES 1-5,
AND XYZ CORPORATIONS 1-5                               DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendants Franklin County Memorial Hospital and Benjamin Yarbrough, M.D.'s motion to transfer venue **(docket entry 5)**. Having carefully considered the motion and response, the memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

This is a wrongful death action brought by the plaintiff, Leila Hewitt, individually and on behalf of the wrongful death beneficiaries of Charles Hewitt, deceased. The Complaint alleges that on December 30, 2009, Charles Hewitt, a resident of Florida, was at his hunting camp in Franklin County, Mississippi, where, at approximately 2:45 p.m. he began to experience chest pains. He entered the emergency room at Franklin County Memorial Hospital ("FCMH") where he was treated by Dr. Benjamin Yarbrough ("Dr. Yarbrough") who also made arrangements to transfer him to St. Dominic's Hospital in Jackson, Mississippi. The Complaint further alleges:

> At approximately 3:45 p.m., on December 30, 2009, FCMH contacted defendant AMR [American Medical Response, Inc.] to transfer Charles Hewitt to St. Dominic's and gave AMR notice of the nature of Charles Hewitt's condition. At 3:50 pm, AMR accepted the call, assured the provision of ready assistance to Charles Hewitt and expressly undertook to render aid to Charles Hewitt. However, AMR did not arrive at FCMH to transfer Charles Hewitt until approximately 7:20 pm. During this delay, FCMH and Dr. Yarbrough failed to procure an ambulance for Charles Hewitt ... and failed to provide Charles Hewitt with appropriate care and medication in a timely manner. While en route to Jackson in the AMR ambulance, Charles Hewitt's condition deteriorated further, and the ambulance was diverted to King's Daughters Medical Center in Brookhaven, Mississippi, approximately 20 miles from FCMH. At King's Daughters, Charles Hewitt was unconscious and placed on a ventilator. Charles Hewitt left King's Daughters via ambulance to St. Dominic's at approximately 11:30 pm.
>
> At approximately 12:30 am on December 31, 2009, Charles Hewitt arrived at St. Dominic's where he was taken to the Intensive Care Unit where surgery was performed on Charles Hewitt. After this surgery on December 31, Charles Hewitt remained on a ventilator until January 11, 2010 when he died.

Complaint, ¶¶ 12-13. The plaintiff alleges that the "negligence, medical negligence, gross negligence, and/or reckless conduct" of all defendants "in failing to adhere to the minimum standards of care" was "the direct and proximate cause of the death of Charles Hewitt." Complaint, ¶ 15. The plaintiff also asserts breach of contract claims against all defendants. Complaint, ¶¶ 18-20.

The Complaint was filed on April 8, 2011, in the United States District Court for the Southern District of Mississippi, Western Division. On May 23, 2011, the defendants filed their motion to transfer venue to the Jackson Division, and on June 14, 2011, the

parties completed briefing the motion.

Jurisdiction in this case is based on diversity of citizenship. Venue is proper in the Southern District of Mississippi since "a substantial part of the events or omissions giving rise to the claim" occurred in the Southern District, specifically the Jackson Division. 28 U.S.C. § 1391(a); see also 28 U.S.C. § 104(b)(1) (Franklin County, Lincoln County, and Hinds County, wherein the events giving rise to the plaintiff's claims occurred, are all located in the Jackson Division of the Southern District).

The plaintiff filed her Complaint in the Western Division. The Complaint fails to state a basis for locating venue in the Western Division; however, since Congress repealed 28 U.S.C. § 1393 in 1988, the venue statute no longer contains a divisional filing requirement, and suit may be brought in any division within a district, in the absence of local rules adopted by a district court requiring that cases be filed in a particular division. See 28 U.S.C. § 1391(a) (setting forth venue rules for districts but not divisions); 28 U.S.C. § 1393: Commentary on 1988 Repeal of § 1393 ("While statutory direction may now be out of the picture, districts that are divided into divisions may still be affected by distinctions between divisions emanating from the court's own rules."); Grain Millers, Inc. v. Pacific Flexpak Co., 2008 WL 550124 *3 (D. Or. Feb. 26, 2008)(transferring case to another

3

division within the district of Oregon where local rules required that "cases 'arising in' a county assigned to a specific division 'must be filed' in that division").

In the absence of a local rule for the Southern District of Mississippi requiring the plaintiff to file in a particular division, the Court turns to the applicable law concerning transfer of venue. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts "have broad discretion in deciding whether to order a transfer." In re Volkswagen of America, Inc. ("Volkswagen II") 545 F.3d 304, 311 (5th Cir. 2008).

In Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53 (5th Cir. 1963), the Fifth Circuit adopted the Supreme Court's forum non conveniens analysis in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), making it applicable to venue transfers under § 1404(a). The factors identified for determining transfer from one district to another also apply to determinations of transfer from one division to another. Volkswagen II, 545 F.3d at 314-15; Crumrine v. Neg Micon USA, Inc., 104 F.Supp.2d 1123 (N.D. Iowa 2000); Mohamed v. Mazda Corp., 90 F.Supp.2d 757 (E.D. Tex. 2000); Cardenas-Garcia v. Texas Tech Univ., 2003 WL 282445 (N.D. Tex. Feb. 4, 2003); Williams v. Toyota Motor Corp., 2008 WL 5158583 (E.D.

Tex. Dec. 9, 2008).

The private and public interest factors first enunciated by the Supreme Court in Gulf Oil, and adopted by the Fifth Circuit in Humble Oil, are:

Private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG ("Volkswagen I"), 371 F.3d 201, 203 (5th Cir. 2004).

Public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." Id.

These factors are neither exhaustive nor exclusive. Moreover, "none ... can be said to be of dispositive weight." Volkswagen II, 545 F.3d at 315, quoting Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004).

The first question to be decided "is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." Volkswagen I, 371 F.3d at 203. As noted above, in the absence of a local rule to the

5

contrary, this case could have been brought in any division in the Southern District; moreover, venue would be particularly appropriate in the Jackson Division since the events alleged in the plaintiff's Complaint occurred there, and two of the defendants, FCMH and Dr. Yarbrough, reside there.

The second issue to be addressed by the Court is the plaintiff's choice of venue. Volkswagen II, 545 F.3d at 312. Nothing ties this case to the Western Division except the plaintiff's choice of venue and the fact that the plaintiff's attorneys have their offices here. Location of counsel is "irrelevant and improper for consideration in determining the question of transfer of venue." In re Horseshoe Entertainment, 337 F.3d 429, 434 (5th Cir. 2003). As for the plaintiff's choice of venue, "[g]enerally, a plaintiff's choice of forum is accorded great deference; however, when a plaintiff is not a resident of the chosen forum, or the operative facts underlying the case did not occur in the chosen forum, the court will not give as much deference to a plaintiff's choice." Apparel Production Services, Inc. v. Transportes de Carga Fema, S.A. de C.V., 546 F.Supp.2d 451, 453 (2008), citing Horseshoe Ent., 337 F.3d at 434-35. Here, the plaintiff is a resident of the State of Florida, and the operative facts all occurred in the Jackson Division; therefore, the plaintiff's choice of venue is accorded little deference, if any. Apparel Production, 456 F.Supp.2d at 455; Kuhl v. City of Frisco,

6

2007 WL 1051760 *3 (E.D. Tex. April 3, 2007).

As for the private interest factors, the relative ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, the cost of attendance for willing witnesses, and the "easy, expeditious and inexpensive" factors are all either neutral or favor the Jackson Division. The parties do not address these factors in any detail; however, since the operative facts all occurred in the Jackson Division, it is safe to assume that the sources of proof and the majority of the witnesses will be located in that division.

The public interest factors also favor the Jackson Division. "Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case." Williams, 2008 WL 5158583 at *6 (Dec. 9, 2008), citing Volkswagen II, 545 F.3d at 318. The Jackson Division clearly has a local interest in the outcome of this case. The residents of that division have extensive connections with the events that gave rise to this litigation. It is therefore both appropriate and desirable that they, and not the residents of the Western Division, be asked to decide the disputed facts of this case. See Kuhl, 2007 WL 1051760 at *6 (potential jurors in division with no connection to lawsuit should not be burdened with jury duty).

The plaintiff contends that the Western Division is more

convenient for the "Defendants, evidence and witnesses" because the courthouse in Natchez is 34 miles from Meadville, Mississippi, where FCMH and Dr. Yarbrough are located, while the courthouse in Jackson is 83 miles from Meadville.  Plaintiff's Surreply, ¶ 3. The Fifth Circuit has held a court should take proximity to the courthouse into consideration "[w]hen the distance between an existing venue for trial and a proposed venue under § 1404(a) is more than 100 miles." Volkswagen I, 371 F.3d at 204-05; Volkswagen II, 545 F.3d at 317.  The distance between the Natchez Courthouse and the Jackson Courthouse is 103 miles, which is above the 100-mile threshold.  Therefore, the Court must examine the relative difference in travel distance for the parties and witnesses.

For parties and witnesses traveling from Meadville, the difference in travel to Natchez and travel to Jackson is 49 miles. This is not a significant difference.  See Cantrell v. City of Murphy, 2010 WL 786591 (E.D. Tex. March 1, 2010)("The additional 51 miles that witnesses would have to travel to Tyler instead of Sherman is not far enough to substantially increase the burden on the witnesses."); Jarvis Christian College v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988)(requiring defendant to litigate in Tyler, Texas, rather than Houston, a difference of 203 miles, was not abuse of discretion); Mohamed, 90 F.Supp.2d at 776 (150-mile distance between Dallas and Marshall, Texas, is negligible); Jackson v. Hankook Tire Co., Ltd., 2008 WL 2747081 (S.D. Miss. June

27, 2008)(distance of 68 miles between Hattiesburg and Gulfport, Mississippi, is not significant); <u>Robertson v. Kiamichi Railroad Co, L.L.C.</u>, 42 F.Supp.2d 651, 657 (E.D. Tex. 1999)(difference of 60 miles between travel distance from Hugo, Oklahoma, to Sherman, Texas, and Muskogee, Oklahoma, is not a significant disparity). In addition, the defendants obviously do not find the Jackson Courthouse to be inconvenient since they have moved to transfer venue to the Jackson Division, and witnesses from Brookhaven and Jackson would be closer to the Jackson Courthouse.

Having considered all of the factors, the Court finds that this case should be transferred to the Jackson Division. Although no one factor is given dispositive weight, the place of the alleged wrong is entitled to great weight in this case. See <u>Spiegelberg v. Collegiate Licensing Co.</u>, 402 F.Supp.2d 786, 791 (S.D. Tex. 2005)("The place of the alleged wrong is one of the more important factors in venue determinations."), citing <u>Lemery v. Ford Motor Co.</u>, 244 F.Supp.2d 720, 732 (S.D. Tex. 2002); <u>Henderson v. AT&T Corp., 918 F.Supp.</u>, 1059, 1067 (S.D. Tex. 1996).

The Court finds that, for the convenience of parties and witnesses, and in the interest of justice, this case should be transferred to the Jackson Division.

Accordingly,

IT IS HEREBY ORDERED that the defendants Franklin County Memorial Hospital and Benjamin Yarbrough, M.D.'s motion to transfer

venue **(docket entry 5)** is GRANTED, and this case is transferred to the Jackson Division of the Southern District of Mississippi.  The clerk of court is directed to transfer the case.

    SO ORDERED, this the 21st day of July, 2011.


                                                  /s/ David Bramlette
                                                  UNITED STATES DISTRICT JUDGE